**Patricia Joan CAMPBELL, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 2014.

Decided March 6, 2014.

Timothy P. Wile, Lansdale, for appellant.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellee.

BEFORE: LEADBETTER, Judge, SIMPSON, Judge and BROBSON, Judge (P.).

## OPINION BY Judge BROBSON.

Appellant Patricia Joan Campbell (Licensee) appeals from an order of the Court of Common Pleas of Montgomery County (trial court). The trial court denied Licensee's statutory appeal of the suspension of her driving privileges by the Department of Transportation, Bureau of Driver Licensing (DOT), for refusing to submit to chemical testing pursuant to Section 1547(b)(1)(i) of the Vehicle Code (Code).[1] Licensee primarily contends that the trial court erred in concluding that DOT set forth a prima facie case under the Implied Consent Law, because it did not establish that Deputy Sheriff Russell P. Rorick, who read the Implied Consent Law warnings and administered the breath test to Licensee, was a "police officer" for purposes of the Implied Consent Law. The trial court concluded that Licensee waived this issue. Licensee also argues that the trial court erred in concluding that her conduct dur-

ing breath sampling testing constituted a refusal to submit to testing. We affirm the trial court's order.

On February 12, 2012, Montgomery Township Police Officer Adam Deussing arrested Licensee and charged her with driving under the influence of alcohol. On March 27, 2012, DOT sent a notice of suspension to Licensee informing her that her driving privileges were suspended for a one-year period as a result of her refusal to submit to chemical testing following her arrest. Licensee filed a statutory appeal of the suspension notice, and the trial court conducted a hearing on February 4, 2013.

During the hearing, DOT introduced the testimony of Officer Deussing. Officer Deussing testified that on February 12, 2012, at approximately 11:30 p.m., the Montgomery Township Police dispatched him to investigate a two-car collision. Officer Deussing testified that when he arrived at the scene, he spoke with Licensee, who at that time was outside of her vehicle. Officer Deussing noted an odor of alcohol on Licensee's breath. Officer Deussing testified that when he first asked Licensee if she had been drinking, "she responded no." (Reproduced Record (R.R.) at 20a.) After Officer Deussing told Licensee that he smelled alcohol, she told him she had had two drinks. Officer Deussing testified that he performed field sobriety tests with Licensee and that he used a portable breath test, which registered a blood-alcohol level of .18. Based upon his observations, Licensee's statements, and the test results, Officer Deussing formed the opinion that Licensee had been operating a vehicle under the influ-

---

1. 75 Pa.C.S. § 1547(b)(1)(i). Section 1547(b)(1)(i) of the Code provides that if any person who is arrested for driving under the influence of alcohol "is requested to submit to chemical testing and refuses to do so ... the department shall suspend the operating privileges of the person ... for a period of 12 months." This provision is commonly known as the Implied Consent Law.

ence of alcohol at an unsafe level. Officer Deussing arrested Licensee and took her to the Montgomery County Sheriff's Office, which has a facility for performing chemical testing of persons suspected of driving under the influence of alcohol.

DOT next offered the testimony of Deputy Rorick. Deputy Rorick testified that he is a certified breath test operator and that he helps "the police departments out processing suspected DUI drivers." (R.R. at 26a.) Deputy Rorick testified that after Officer Deussing brought her in for testing, he read the Implied Consent Law warnings several times to Licensee, who ultimately indicated that she understood the warnings. Deputy Rorick then requested Licensee to submit to chemical testing, and she agreed. Deputy Rorick testified that he used "the BAC Data Master." (R.R. at 29a.)

Deputy Rorick testified that he explained to Licensee several times how to take the test:

> I explained to [Licensee] that in order to receive a proper sample of breath, she needed to take a deep breath in, put her lips tightly around the mouthpiece so that no air can come out the sides and that the only air that goes from her body is through the tube, and to continuously blow through the tube into the instrument until she's told to stop.

(R.R. at 32a.) Deputy Rorick testified that the first time Licensee attempted to complete the test, she stopped submitting breath after four or five seconds, which is an insufficient breath for testing purposes. (*Id.*) As a result, he had to interrupt that test to permit the machine to "clear out." (*Id.*) Deputy Rorick testified that, after her first failed attempt to provide a sufficient sample, he offered the breath tube to Licensee and directed her to begin to breathe into the tube. (R.R. at 81a–82a.) Deputy Rorick testified that this request

was premature, because "the instrument was not ready for her to" blow into it. (*Id.*) Deputy Rorick testified that when the instrument was ready to receive Licensee's second attempt to submit a sample, Licensee made a second attempt. With regard to that attempt, Deputy Rorick testified:

> Now, the second—the second actual sample that she was actually [giving], the part of the test was—the same thing happened. I showed her—re-showed her how to do it. And she began to blow, and she blew for, I would say, maybe eight seconds, but to my best recollection, which I cannot say is one hundred percent positive at this time, she was blowing out the side slightly. And she stopped blowing and it started beeping again. The instrument started to beep. And then she started to blow again. And then it started to beep again. So, at that time, I pulled it from her mouth again. That was the second sampling of the test, the actual sample.

(R.R. at 33a.) Deputy Rorick testified that the second sample was insufficient. (*Id.*) After the second unsuccessful attempt and after a conversation with the deputy-in-charge, he discontinued testing and recorded a refusal. In rebuttal testimony, Deputy Rorick testified that he "was going to give her [another, third attempt], and my—the deputy in charge of me told me that you gave her two opportunities, and that is it." (R.R. at 80a.)

Licensee also testified. Licensee's description of Deputy Rorick's administration of the test does not deviate from his description. Licensee testified that she would never refuse to submit to testing and that she gave a good faith effort in seeking to submit sufficient breath samples. She also specifically testified that she stopped providing breath in the first attempt, because, after she had submitted some breath, the machine emitted a beep,

which she thought meant she should stop breathing into the machine.

■ The trial court denied Licensee's appeal, and Licensee appealed that order.[2] Licensee submitted a concise statement of errors complained of on appeal, in which Licensee raised the question of whether DOT failed to establish a prima facie case because Deputy Rorick is not a police officer under the Implied Consent Law for the purpose of providing the Implied Consent Law warnings. Licensee also raised the question of whether evidence supports the trial court's conclusion that Deputy Rorick afforded Licensee a reasonable opportunity to comply with the request to submit to testing.

With regard to the question of whether DOT failed to establish a prima facie case based upon Deputy Rorick's reading of the Implied Consent Law warnings, the trial court concluded that Licensee waived this issue because she did not object to Deputy Rorick's testimony during the hearing nor raise the issue at any point during the hearing. The trial court alternatively opined that DOT is not required to present evidence that Deputy Rorick's training was similar or equivalent to that of a police officer when a licensee does not raise the issue in a license suspension appeal and does not challenge the testimony at the time of the hearing. The trial court opined that "[t]his evidence is simply not part of [DOT]'s prima facie case." (Trial Ct. Opinion at 6.) Licensee now raises those same issues on appeal to this Court.

■ When a licensee files a statutory appeal from an order suspending her driving privileges for driving under the influence of alcohol based upon a refusal to submit to chemical testing, DOT must establish that (1) police arrested the licensee based upon reasonable grounds to believe that the licensee was operating a motor vehicle while under the influence of alcohol; (2) the police asked the licensee to submit to a chemical test; (3) the licensee refused to submit to testing; and (4) the police warned the licensee that refusing to submit to testing would result in license suspension. *Bomba v. Dep't of Transp., Bureau of Driver Licensing*, 28 A.3d 946, 949 (Pa.Cmwlth.2011). DOT, thus, bears the initial burden to establish a prima facie case that the licensee was given the Implied Consent Law warnings. Specifically, Section 1547(b.1)(2) of the Code provides that "[i]t shall be the duty of the *police officer* to inform the person that the person's operating privileges will be suspended upon refusal to submit to chemical testing." (Emphasis added.) Licensee first argues that DOT failed to establish that a police officer provided Licensee with the required warning and that the trial court erred in concluding that Licensee waived this issue by failing to raise it before she filed her concise statement of errors complained of on appeal.

### Whether Licensee Waived the Issue of the Implied Consent Law Warnings?

■ Licensee contends that the trial court erred in concluding that she waived the issue of whether DOT established that she received the warnings required by the Implied Consent Law. Licensee argues that she did not have to raise the question of whether DOT failed to present a prima

---

**2.** This Court's review of an order of a trial court denying a licensee's statutory appeal from a license suspension by DOT is limited to considering whether the trial court's factual findings are supported by competent evidence, and whether the trial court erred as a matter of law or demonstrated a manifest abuse of discretion. *McCloskey v. Dep't of Transp., Bureau of Driver Licensing*, 722 A.2d 1159, 1161 (Pa.Cmwlth.), *appeal denied*, 559 Pa. 708, 740 A.2d 235 (1999).

facie case *until* she filed her concise statement of errors complained of on appeal. Licensee refers this Court to two decisions of the Superior Court, in which that court addressed the question of whether a party had waived a challenge to the sufficiency of the evidence. However, both of those cases involve consideration of the question of whether a party failed to *preserve* an issue in its concise statement by failing to allege with precision the nature of the challenge.

■ While a party has a duty to preserve an issue at every stage of a proceeding, he or she also must comply with the general rule to raise an issue at the earliest opportunity. *Renna v. Dep't of Transp., Bureau of Driver Licensing,* 762 A.2d 785, 788 (Pa.Cmwlth.2000) (holding failure to raise issue during trial court's hearing constituted waiver). Recently, in the context of a judicial discipline proceeding, our Supreme Court reiterated the notion that a party must raise issues at the earliest opportunity. In *In re Lokuta,* 608 Pa. 223, 11 A.3d 427 (2011), *certiorari denied,* —— U.S. ——, 132 S.Ct. 242, 181 L.Ed.2d 138 (2011), the Supreme Court rejected the appellant's argument that the decision of the Pennsylvania Court of Judicial Discipline was improper because one of the members of that Court was constitutionally ineligible based upon his age to participate in the disciplinary proceedings. In that case, the judicial officer who was the subject of the disciplinary process filed a pre-trial recusal motion, but did not mention this particular issue. The Supreme Court concluded that the appellant had waived the issue,[3] quoting *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757 (1989), for the proposition that "a party seeking recu-

sal or disqualification must raise that issue at the earliest opportunity or be barred from obtaining appellate review of the question." *Id.* at 241, 11 A.3d at 437.

In this case, Licensee had two opportunities to raise this issue during the trial court's hearing. First, Licensee's counsel specifically asked the trial court whether the Commonwealth had rested its case. (R.R. at 56a.) When the Commonwealth acknowledged it had rested, Licensee's counsel motioned to sustain the appeal without having to put on any evidence. (R.R. at 56a–57a.) The only matters counsel raised, however, concerned DOT's suspension notice and the length of the suspension DOT imposed. (R.R. at 58a–61a.) Licensee could have raised the subject issue at that time, but did not.

We note also that near the close of the hearing, the trial court entertained argument regarding the parties' positions, and Licensee had the opportunity then to assert that DOT did not demonstrate that Licensee had been properly warned. The only arguments Licensee made were that the breathalyzer machine malfunctioned and that Deputy Rorick did not properly operate the breathalyzer machine. Thus, we conclude that the trial court did not err in determining that Licensee waived the issue regarding the Implied Consent Law warnings provided to her.

■ We further reject Licensee's argument that waiver should not apply because she is challenging an element of DOT's prima facie case. In *Kollar v. Department of Transportation, Bureau of Driver Licensing,* 7 A.3d 336 (Pa.Cmwlth.2010), this Court addressed a licensee's challenge to a

3. Similarly, the Superior Court has held that the failure of a party to make a timely and specific objection to a "basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim that was not called to the trial court's attention at a time when any error committed could have been corrected." *Thompson v. Thompson,* 963 A.2d 474, 475–76 (Pa.Super.2008).

suspension based, in part, upon her claim that the arresting officer did not adequately explain why she could not speak with an attorney. She attempted to raise a question in her appeal from the trial court's order regarding whether DOT satisfied its burden of proof. We concluded that the licensee had waived the issue:

> She did not make any argument [before the trial court] that would impact DOT's initial burden. She did not raise any issue with regard to a proper appraisal of her rights in terms of whether she was permitted to make a phone call prior to agreeing to submit to chemical testing. Issues not raised before the trial court cannot be raised for the first time on appeal.

*Id.* at 343 (citation omitted); *see also Thoman v. Dep't of Transp., Bureau of Driver Licensing,* 965 A.2d 385 (Pa.Cmwlth.2009) (holding licensee waived issue regarding whether police officer read Implied Consent Warning where he failed to raise issue before trial court).

Licensee also relies upon the Pennsylvania Rules of Criminal Procedure in arguing that she could properly raise this issue for the first time in her statement of errors complained of on appeal. Licensee argues that criminal appeals courts have permitted an appellant to raise challenges to the sufficiency of the evidence for the first time on appeal under Pa. R.Crim. P. 606(A)(7). As Licensee recognizes, however, this matter is a civil, not criminal proceeding, and thus, the Rules of Criminal Procedure are not applicable here.

■ Additionally, we are not persuaded that certain decisions of this Court holding that the warning element contained in Section 1547 of the Code requires a police officer to administer the Implied Consent Warnings[4] mean that DOT must always offer proof on this issue. In contrast to those decisions, we see no basis upon which to conclude that Section 1547 of the Code requires a trial court to consider, without *timely* motion or argument by a licensee, the question of whether DOT has failed to demonstrate that the officer who read the Implied Consent Warnings to a licensee is a "police officer" within the meaning of Section 1547 of the Code. While our decisions may suggest that DOT may proceed at its own risk in offering the testimony of a deputy sheriff who may not have the qualifications to act as a "police officer," we find no merit to Licensee's argument that she could wait until after the close of the trial court's hearing to raise the issue. Based upon the foregoing analysis, we need not address the issue that Licensee has raised regarding Deputy Rorick's substantive qualifications to administer the Implied Consent Law warnings. Our conclusion and reasoning is consistent with this Court's recent unreported decision by the Honorable James Gardner Colins in *Sullivan v. Department of Transportation, Bureau of Driver Licensing,* 2014 WL 309551 (Pa.Cmwlth., No. 1031 C.D.2013, filed January 28, 2014), which we find persuasive.

### *Whether Deputy Rorick Afforded Licensee a Reasonable and Sufficient Opportunity to Complete the Breath Test?*

■ In considering whether a licensee has refused to submit to chemical testing, "[a]nything substantially short of an unqualified and unequivocal assent to a

---

4. *See, e.g., Demarchis v. Dep't of Transp., Bureau of Driver Licensing,* 999 A.2d 639, 641 (Pa.Cmwlth.2010); *Solomon v. Dep't of Transp., Bureau of Driver Licensing,* 966 A.2d 640, 643 (Pa.Cmwlth.), *appeal denied,* 603 Pa. 678, 982 A.2d 67 (2009); *Taylor v. Dep't of Transp., Bureau of Driver Licensing,* 948 A.2d 189, 196 (Pa.Cmwlth.2008); *Quick v. Dep't of Transp., Bureau of Driver Licensing,* 915 A.2d 1268, 1271 (Pa.Cmwlth.2007).

request to submit to chemical testing is a refusal." *Warner v. Dep't of Transp., Bureau of Driver Licensing,* 723 A.2d 755, 757 (Pa.Cmwlth.1999). Conduct that appears inconsistent with verbal acquiescence also may constitute a refusal. *In re Budd,* 65 Pa.Cmwlth. 314, 442 A.2d 404, 406 (1982). Additionally, part of DOT's burden includes establishing that the arresting authorities provided a licensee with a meaningful opportunity to comply with the chemical testing requirement of the Implied Consent Law. *Solomon,* 966 A.2d at 642. In this case, our focus is on the question of whether Deputy Rorick provided Licensee with a reasonable and sufficient opportunity to complete the breath test, such that Licensee's failure to provide an adequate sample constituted a refusal.

In support of her position, Licensee relies on two key appellate decisions that describe examples of instances where courts have found that licensees have been offered adequate and inadequate opportunities to comply with requests to submit to chemical testing. In *Todd v. Department of Transportation, Bureau of Driver Licensing,* 555 Pa. 193, 723 A.2d 655 (1999), our Supreme Court evaluated an appeal involving testing using an "Intoxilyzer 5000." That particular machine "operated on a three-minute test cycle, so the blood alcohol content had to be recorded within that time period to obtain an accurate result." *Todd,* 555 Pa. at 195–96, 723 A.2d at 657. Todd, the licensee in that case, provided an inadequate sample on his first attempt. Todd made two more attempts, both of which were inadequate, and the officer who was testing him recorded his attempts as a refusal. In his appeal, Todd argued that he had not been offered a reasonable opportunity to comply because thirty seconds remained of the three-minute cycle on the machine, and that the officer should have offered him another opportunity to comply within that thirty-

second time period. Todd argued that if he had had a fourth opportunity and had failed to supply a sufficient sample, recording his effort as a refusal would be appropriate, but that because he never expressed a desire to terminate the testing before the expiration of the three-minute time period, the officer should not have recorded a refusal. The Supreme Court opined that

> [t]o effectuate the purposes of the implied consent law, testing officers must be afforded a degree of flexibility in obtaining satisfactory breath samples for a proper test, thus enabling them to deal realistically with licensees who agree to submit to chemical testing, and yet repeatedly fail to provide sufficient breath samples for analysis.

In this case, DOT adduced sufficient facts to establish that Todd was provided with a reasonable and sufficient opportunity to take and complete the breath test. Todd's failure to provide the necessary samples after being afforded three opportunities clearly fell short of the required unqualified, unequivocal consent and thus constituted a refusal.... Since Todd made no attempt to establish a reasonable explanation for his failure, the trial court erred in sustaining his license suspension appeal.

*Id.* at 199–200, 723 A.2d at 659.

The other decision, *Bomba,* involved an instance in which a licensee successfully challenged a determination that she had not been provided a reasonable and sufficient opportunity to submit to chemical testing. The trial court in that case determined that the licensee, Bomba, gave unqualified and unequivocal consent to breath testing, but that she was unable to provide an adequate sample within the maximum two-minute window the "BAC Datamaster" breathalyzer machine uses

for breath sampling. The trial court also determined that, after her unsuccessful attempt, Bomba immediately requested to attempt to take a second test, but that the administering officer refused her request. During the trial court's hearing in that case, testimony revealed that the officer administering the test stated to the licensee after the first attempt that it would take ten minutes for the machine to be ready again, and that she, the officer, only had to offer one test. Ultimately, the trial court concluded that, under the circumstances, the licensee's conduct did not amount to a refusal.

This Court affirmed the trial court in *Bomba*, distinguishing the decisions upon which DOT relied, noting that those decisions involved situations in which a licensee had been offered multiple opportunities to comply. We agreed with the trial court's recognition of the fact that the Code places a two-hour limit for testing following an arrest for suspicion of driving under the influence of alcohol in order to avoid inaccurate blood-alcohol content results, *see* 75 Pa.C.S. § 3802(a)(2). We noted, however, that the timing provision was not an issue with regard to Bomba's testing. This Court observed that Bomba failed only the initial test, immediately sought to retake the test, and that DOT offered no evidence suggesting that Bomba was attempting to delay the testing or producing a sample that she intended to be inadequate. *Bomba*, 28 A.3d at 950.

We rejected DOT's reliance upon a decision in which we commented that police are not under a duty to spend their time attempting to persuade arrestees to submit to testing. *Id.* The Court in *Bomba* deemed significant the fact that DOT presented no evidence of delay tactics, "such as deliberately not following instructions." *Bomba*, 28 A.3d at 950. Moreover, we noted that the licensee admitted that she

messed up, that she wanted to retake the test immediately, and that, because it had only been one hour since her arrest, there was no concern that an adequate sampling at that time would be inaccurate. We summarized the basis for our affirmance of the trial court as follows:

> The crucial, determinative factor we glean from the cases is whether [DOT]'s evidence shows that the licensee deliberately tried to delay or undermine the testing process. Such evidence was simply not presented in this case. Rather, the evidence showed, and the trial court found, that Licensee made a good faith, but unsuccessful, attempt to provide a breath sample and immediately requested to attempt the test a second time. This conduct does not constitute a refusal. Stated otherwise, [DOT] is incorrect that in every case where the officer decides not to give the licensee a second chance at a breathalyzer, it has proven a refusal to consent to chemical testing.

*Id.* at 951.

As we noted in *Bomba*, the resolution of the issue boils down to the evidence and the trial court's factual findings. In this case, unlike *Bomba*, Deputy Rorick offered Licensee more than one opportunity to comply. The trial court determined that Deputy Rorick provided straightforward instructions to Licensee regarding how to breathe into the tube, but that Licensee failed to provide a sufficient amount of breath during her two opportunities. The trial court also found Licensee's testimony to be not credible. The trial court accepted Deputy Rorick's testimony, which included a statement that he observed Licensee, during her second attempt to provide a sample, "blowing out the side slightly." (R.R. at 33a.) Deputy Rorick's entire testimony supports the trial court's determination that Deputy Rorick explained the instructions to Licensee,

including that she must provide a constant breath, but that she did not comply with the instructions, such as his direction to continue to blow and to keep a firm seal around the tube when breathing into it.

 Unlike the trial court in *Bomba,* the trial court here did not make a finding that Licensee was acting in good faith. Rather, the trial court concluded that two opportunities to comply were sufficient because Deputy Rorick had fully explained the process to Licensee, but that she failed to comply with the instructions. Thus, in the absence of facts suggesting that Licensee was acting in good faith and that she was only provided one opportunity to submit a sample, *Bomba* is distinguishable from the facts in this case. Here, where the trial court did not find Licensee credible, there was no factual basis from which the trial court could have concluded that this matter was more akin to *Bomba* than to *Todd.*[5]

Accordingly, we affirm the trial court's order.

### ORDER

AND NOW, this 6th day of March, 2014, the order of the Court of Common Pleas of Montgomery County is AFFIRMED.

---

5. We are also not persuaded by the other factors upon which Licensee relies to argue that she was not afforded a reasonable opportunity to submit a sample: (1) confusion arising from the deployment of Licensee's air bag; (2) the false start preceding Licensee's second attempt; and (3) Deputy Rorick's compliance with his supervisor's direction to discontinue his attempts to obtain an adequate sample. With regard to alleged confusion following the deployment of the air bag, as the trial court noted, when a licensee raises a medical condition as an excuse for not being able to provide a sample, the licensee must submit expert testimony. *Pappas v. Dep't of Transp., Bureau of Driver Licensing,* 669 A.2d 504, 509 (Pa.Cmwlth.1996). With regard to the false start following Licensee's first unsuccessful attempt, given the trial court's credibility determinations regarding Licensee, we find no support for the claim that the false start prevented Licensee from offering an adequate sample after the machine became ready to accept Licensee's second sample. Finally, Licensee does not present argument explaining how the intervention of Deputy Rorick's supervisor, in directing Deputy Rorick not to proceed to a third attempt, resulted in a denial of a reasonable opportunity to submit to testing.