# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dan Sweigart, Claudia Benack,     :
Christine McNally, Patti Joseph,     :
Margaret Alice Bothwell (Thomson),   :
Beverly Romano, Georgene Siroky,    :
Leslie Hyde, Lou Sanotra, Rose Lepri,   :
Edward Szabo, Diane Szabo, Elizabeth   :
Szabo, Nancy Kusko, Travis Boyle,    :
Carrie Boyle, Judith Frazier, Betty     :
Caricchio, Kirk Bruce, Donna Schaude,   :
Janice Knapp, Jacqueline Carlucci,    :
Eleanor Jane Check, Cathy Newell,    :
Vicki Conti, Brian Jackson, Katherine   :
Jackson, Lorren Pallone, Anne Pieto,   :
Toni Weston, Keith Miller, Rose Mugo,   :
Mike Janosik, Dawna Fisher, Matt     :
Mager, Domenic Medina, Nina Carilli,   :
Nancy Rogozinski, Albert Sanders and   :
Justin Rees, a/k/a Concerned Owners of :
Homes in London Towne Homeowners   :
Association                           :
                                       :
            v.                      :
                                         :
London Towne Homeowners      :
Association and Bennett Carlise     :
                                       :
            v.                      :
                                       :
Matthew Serota             :
                               :   No. 591 C.D. 2021
Appeal of: Bennett Carlise      :   Submitted: June 23, 2022


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                   FILED: August 9, 2022

Bennett Carlise (Carlise) appeals from the Allegheny County Common Pleas Court's (trial court) May 20, 2021 order denying his Motion to Vacate the Temporary Receiver (Motion). Carlise presents five issues for this Court's review: (1) whether temporary receiver Robert G. Xides, Jr., Esquire (Receiver) was appointed and/or permitted to continue to conduct London Towne Homeowners Association (Association) business in violation of Pennsylvania Rule of Civil Procedure (Rule) 1533 (relating to appointing receivers);[1] (2) whether there was a legal basis under *Tate v. Philadelphia Transportation Co.*, 190 A.2d 316 (Pa. 1963), and *Bowman v. Gum Inc.*, 184 A. 258 (Pa. 1936), to appoint the Receiver or continue the Receiver's appointment; (3) whether the appointment and continuation of the Receiver for the purpose of dissolving the Association violated the terms of Paragraph 7 of a court-ordered Limited Settlement and Release Agreement (Settlement Agreement); (4) whether Margaret Alice Bothwell (Thomson), Dawna Fisher (Fisher), and Matt Mager (Mager), *inter alia*, a/k/a Concerned Owners of Homes in London Towne Homeowners Association (Concerned Owners)[2] lacked standing to file the Petition to Appoint a Receiver (Receiver Petition) to dissolve the Association or have the appointment continue because they failed to bring suit and make a claim for relief by way of a shareholder derivative action in violation of the

[1] Rule 1533 provides, in relevant part, that temporary receivers may be appointed without notice if exigencies exist, the petitioners file a bond, and the receiver posts performance security; a hearing to continue the appointment must be promptly held after notice is provided to all interested parties; and the trial court's order shall fix the time for a permanent receiver to file his/her report. *See* Pa.R.Civ.P. 1533.

[2] Concerned Owners also include Dan Sweigart, Claudia Benack, Christine McNally, Patti Joseph, Beverly Romano, Georgene Siroky, Leslie Hyde, Lou Sanotra, Rose Lepri, Edward Szabo, Diane Szabo, Elizabeth Szabo, Nancy Kusko, Travis Boyle, Carrie Boyle, Judith Frazier, Betty Caricchio, Kirk Bruce, Donna Schaude, Janice Knapp, Jacqueline Carlucci, Eleanor Jane Check, Cathy Newell, Vicki Conti, Brian Jackson, Katherine Jackson, Lorren Pallone, Anne Pieto, Toni Weston, Keith Miller, Rose Mugo, Mike Janosik, Domenic Medina, Nina Carilli, Nancy Rogozinski, Albert Sanders, and Justin Rees.

Nonprofit Corporation Law of 1988 (Law);[3] and (5) whether Concerned Owners lacked the legal capacity and/or standing to file the Receiver Petition or have the Receiver's appointment continue because (a) they were not a legally viable entity when the Receiver Petition was filed; (b) they filed the Receiver Petition to commence this action without first filing a praecipe or complaint in violation of Rule 1007 (relating to commencement of actions), Pa.R.Civ.P. 1007; and (c) there was no record service of process of the Receiver Petition. After review, this Court affirms.

## Background

The Association is a Pennsylvania non-profit corporation and planned community consisting of 70 townhouses located in Pittsburgh, Pennsylvania, governed by a Declaration of Covenants, Conditions, and Responsibilities (Declaration) recorded in 1979, *see* Reproduced Record (R.R.) at 19a-36a, and the London Towne Homeowners Association Bylaws (Bylaws). *See* R.R. at 45a-62a. Carlise is the Association's claimed president. On or about October 1, 2017, Carlise was appointed to the Association's Executive Board (Board). Thereafter, the Association's community unit home owners (community owners) became concerned regarding Carlise's handling of Association business and growingly disquieted about Intervenor/community owner Matthew Serota's (Serota) involvement therewith.[4]

At a January 5, 2018 special meeting, the community owners voted 41 to 23 in favor of dissolving the Association. *See* Supplemental Reproduced Record (S.R.R.) at 9b. At the September 5, 2018 annual Association meeting, a majority of the community owners voted to remove Carlise and two other Board members that Carlise unilaterally appointed (37 votes in favor, 25 in opposition). *See* R.R. at 69a-

---

[3] 15 Pa.C.S. §§ 5101-6146.
[4] Serota owns 24 of the 70 units in the community. *See* R.R. at 115a, 132a.

3

72a. The Board members argued that their removal was invalid because the votes fell short of the 66%, or two-thirds, vote necessary for their removal, pursuant to Section 5303(f) of the Uniform Planned Community Act (UPCA).[5] The community owners argued that a simple majority was all that the Association's Bylaws required to remove the three Board members, and requested the Board members to step down. Concerned Owners' counsel notified the Board members by December 21, 2018 letter that if they did not step down, they would be in violation of the Association's Bylaws. *See* R.R. at 90a-92a. Thereafter, the two Carlise-appointed Board members stepped down. *See* R.R. at 93a. Carlise did not step down but, rather, retained counsel (purportedly on the Association's behalf) to stop his removal.

On March 27, 2019, Concerned Owners filed the Receiver Petition in the trial court. Therein, Concerned Owners pled that the Board's failure to dissolve the Association despite the community owners' January 5, 2018 vote, continued dissension between Carlise and the community owners, and ongoing disbursements of Association funds required the immediate appointment of a receiver. *See* R.R. at 14a-15a. Concerned Owners also represented to the trial court that Carlise has been the only Board member to sign Association checks (when multiple check signors are required), *see* R.R. at 101a-102a, and he no longer lives in the community which, according to the Bylaws, prohibits him from sitting on the Board. *See* R.R. at 102a.

---

[5] Section 5303(f) of the UPCA provides:

> Notwithstanding any provision of the declaration or bylaws to the contrary, the unit owners, by a two-thirds vote of all persons present and entitled to vote at any meeting of the unit owners at which a quorum is present, may remove any member of the executive board with or without cause, other than a member appointed by the declarant.

68 Pa.C.S. § 5303(f). The UPCA went into effect on February 2, 1997.

On July 11, 2019, the trial court issued an order scheduling a hearing on the Receiver Petition for July 18, 2019. *See* R.R. at 95a. On July 18, 2019, the trial court permitted argument (without testimony) related to the Receiver Petition, at which the trial court granted Serota's petition to intervene in the action. *See* R.R. at 100a. During argument, Carlise's counsel acknowledged that the Association had a history of dysfunction, *see* R.R. at 108a, claimed that it would not be beneficial to dissolve the Association, *see* R.R. at 106a, and declared that "the appointment of a receiver [wa]s an extreme remedy." R.R. at 113a. Notwithstanding, the trial court ruled from the bench: "I am going to put a neutral receiver in[,]" and *afforded the parties time at argument to agree upon a receiver*. R.R. at 117a. Carlise did not place any objection on the record at the hearing.

By order entered July 18, 2019, the trial court appointed the Receiver as a temporary receiver and directed him to file a report and recommendation (Report) within 45 days (Appointment Order). *See* R.R. at 120a-123a. The Receiver accepted the appointment on July 24, 2019, and requested a retainer to be paid from the Association's funds. *See* R.R. at 124a-125a. No appeal was filed from the Appointment Order.

On August 29, 2019, the Receiver met with Concerned Owners to address their concerns. *See* R.R. at 132a. On September 3, 2019, the Receiver conducted the Association's annual meeting. *See id*. At the Association's September 3, 2019 annual meeting, three community owners were elected to the Board; however, the complement remained below the Bylaws' required five members. *See* R.R. at 136a, 141a.

On September 13, 2019, the Receiver filed his Report, therein finding, *inter alia*, that the community owners' primary concerns are the Association's lack of transparency in its actions and the constant threat of being sued. *See* R.R. at 135a. He opined that the Board's expenditures during the previous three years,

5

"particularly for attorneys' fees, liability insurance premiums[,] and assessment credits," were justified and benefited the Association. R.R. at 143a. The Receiver determined that "although its governance is in constant dispute, the Association is performing the services of lawn care, gutter cleaning[,] and pest control to homeowners on a regular basis." R.R. at 136a. The Receiver "found no evidence of self-dealing, dishonesty[,] or corruption in the conduct of the Association." *Id*. The Receiver concluded that the community owners' "[January 5, 2018] vote was legal[ly] sufficient to dissolve the Association." R.R. at 137a. He also declared that the community owners' September 5, 2018 vote to remove the Board members was legal but, since there were *no* Board members until the September 3, 2019 annual meeting, and there were only three thereafter, the legality of any actions taken during that time was called into question. *See* R.R. at 138a, 140a, 142a-144a.

The Receiver stated that the Association had been in a state of turmoil for five years, stemming from the mutual distrust between Serota and the community owners. *See* Report at 6 (R.R. at 132a). The Receiver observed: "The Association is now hopelessly divided into pro-Serota and anti-Serota camps. The two sides disagree on virtually every aspect of governing the Association, including whether the Association exists at all." Report at 8 (R.R. at 134a).

The Receiver concluded:

> After thorough investigation and attendance at two meetings of the Association members, the Receiver finds the Association to be partially paralyzed, without hope for a quick cure. The division between the pro-Serota and anti-Serota forces has caused such fear and anger that the Association has been unable to elect the required five (5) Board members for almost three (3) years. Three (3) major lawsuits against the Association (two by Serota, one by those opposing Serota) have left community residents justifiably terrified of further litigation and reluctant to run for Board seats. The Association is currently financially

6

stable, but that will quickly change if residents continue to refuse payment of their assessments.

In this environment, the continuation of the Association is a burden rather than a benefit to the community. The benefits of having lawn care, gutter cleaning and pest control provided by the Association seem miniscule compared to the burden of bad feelings and constant litigation caused by the Association.

If not for the clear requirement of the Declaration which established the Association that its covenants and restrictions must continue forever unless terminated unanimously by all owners and mortgagees, **the Receiver would recommend dissolution of the Association**. The Receiver can **and** does recommend **the suspension of all regular Association activities**. With no Board members for almost a year, an illegal number of members for nearly three years and a continuing boycott of assessments, the Association has already begun to suspend itself.

The Receiver recommends that the Association immediately cease all regular activities such as contracting for lawn care and other services and issuing assessments. The Receiver further recommends that the Association's activities be limited to payment of current debts and otherwise winding down the Association's affairs under the supervision of the Receiver and the [trial c]ourt. It is recommended that resale certificates and any other documents necessary for transfer of units be issued until the [trial c]ourt determines that they are no longer necessary because the Association's business is complete. The Receiver will submit to the [trial c]ourt a list of debts for payment.

The Receiver recommends that re-activation of the Association be allowed by the [trial c]ourt upon petition signed by at least seventy-five percent (75%) of unit owners. This is the same percentage required for amendment of the Declaration. Without such an expression of cooperation, re-activation of the Association would only trigger the same bad feelings that now exist.

The Receiver feels that the recommended suspension in this case is well within the broad equity power of the [trial c]ourt. Courts sitting in equity hold broad powers to grant

> relief that will result in an equitable resolution of a dispute. (*See Williams T*[*wp.*] *B*[*d.*] *of Supervisors v. Williams T*[*wp.*] *Emergency Co*[.], 986 A.2d 914 (Pa. Cm[wlth.] 2009)).

Report at 18-20 (R.R. at 144a-146a) (italics and bold emphasis added).[6]

On September 3, 2019, Serota filed preliminary objections to the Receiver Petition. On October 1, 2019, Serota filed amended preliminary objections to the Receiver Petition. On December 10, 2019, the trial court conducted a status conference. On December 12, 2019, the trial court entered an order authorizing the Receiver to conduct the Association's business pending further trial court order, and prohibiting Serota and the purported Board members from exercising any of the Association's powers (Continuation Order).[7] *See* R.R. at 178a-180a. By January 2, 2020 email to Serota, Mager, and Carlise's counsel, the Receiver summarized his payments of the Association's outstanding invoices. *See* R.R. at 234a-235a, 255a-256a.

On January 3, 2020, Concerned Owners filed a Complaint in Support of Petition to Appoint Receiver and also Seeking Dissolution of Association and Appointment of Permanent Receiver for Winding Up Association (Complaint).[8] On January 24, 2020, Serota filed preliminary objections to the Complaint. On January 25, 2020, Serota filed Second Amended Preliminary Objections to the Receiver Petition. On January 27, 2020, Carlise filed preliminary objections to the Complaint on the Association's behalf. Concerned Owners filed a single response to all of the preliminary objections.

---

[6] Various exceptions and objections to the Report, and responses thereto, were filed between September 25, 2019 and February 2020. *See* Original Record at Items 14, 20-21, 41, 43-44.

[7] By orders dated December 10, 2019, and January 23, 2020, the trial court directed the Association to pay the Receiver's law firm for his services. No appeals were filed from those orders.

[8] Allegheny Cnty. Docket No. GD-19-004563.

Also on January 27, 2020, Carlise filed the Motion, arguing that "[i]t is clear that no permanent receiver is required, [] the duties requested of the [t]emporary Receiver have been long completed and fulfilled," R.R. at 185a, and the trial court should vacate the Receiver's appointment, reinstate the Board, and order that all community owners pay his legal fees and expenses or, in the alternative, Concerned Owners should pay his legal fees and expenses. *See* R.R. at 183a-195a. That same day, Carlise also filed a Petition for Special Relief in response to the Receiver Petition, asking the trial court to, *inter alia*, enforce Rule 1533's mandatory provisions. *See* R.R. at 196a-214a. On or about February 14, 2020, Concerned Owners filed a reply to Carlise's Motion, *see* R.R. at 215a-234a, and a response to his Petition for Special Relief. *See* R.R. at 235a-259a.

On June 17, 2020, the trial court heard oral argument on Serota's and Carlise's/the Association's preliminary objections to the Receiver Petition and the Complaint. On July 2, 2020, the trial court overruled all of the preliminary objections. On July 27, 2020, Serota appealed to this Court. *See Concerned Owners of Homes in London Towne Homeowners Ass'n v. London Towne Homeowners Ass'n* (Pa. Cmwlth. No. 772 C.D. 2020, filed July 7, 2021) (*Serota 2021*). In *Serota 2021*, Concerned Owners filed a motion to quash the appeal because the trial court's July 2, 2020 order was interlocutory and not immediately appealable. This Court heard oral argument on May 10, 2021. On July 7, 2021, this Court granted Concerned Owners' motion to quash Serota's appeal. *See id*.

The trial court conducted hearings on Carlise's Motion and Petition for Special Relief on July 22, August 5, and November 20, 2020, and March 23, 2021.[9]

---

[9] On or about November 17, 2020, Carlise filed a praecipe to withdraw without prejudice his request in the Motion that all of the community owners pay his legal fees and expenses. *See* R.R. at 260a-263a.

In the interim, Serota and Kathleen Tomko (Tomko) filed the following lawsuits for defamation, false light, tortious interference, declaratory judgment, and injunctive relief against

*See* R.R. at 264a-303a. On April 19, 2021, Carlise filed a Post-Hearing Brief in Support of Motion (Post-Hearing Brief), and Concerned Owners filed their position statement. *See* R.R. at 304a-362a. On May 20, 2021, the trial court denied the Motion. *See* R.R. at 363a.

Carlise appealed to this Court.[10] The trial court ordered Carlise to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania

---

four of the hearing witnesses: *Serota v. Mager*, Allegheny Cnty. Docket No. GD-20-008812; *Serota v. Fisher*, Allegheny Cnty. Docket No. GD-20-009134; *Serota v. Mager*, Allegheny Cnty. Docket No. GD-20-009548; and *Tomko v. Mager*, Allegheny Cnty. Docket No. GD-20-009891. On November 6, 2020, the trial court granted Serota's and Tomko's motion to consolidate these lawsuits and any future lawsuits filed among the parties, with Concerned Owners' Complaint. Carlise appealed from the trial court's November 6, 2020 order to this Court (Pa. Cmwlth. No. 1254 C.D. 2020). By June 22, 2021 Order, this Court quashed that appeal on the basis that the trial court's November 6, 2020 order was not an immediately appealable collateral order.

[10] "[T]he decision as to whether a receiver should be appointed is within the sound discretion of the [trial] court[.]" *Northampton Nat'l Bank of Easton v. Piscanio*, 379 A.2d 870, 873 (Pa. 1977). Accordingly, this Court's review of a trial court's order appointing a receiver is limited to determining whether the trial court abused its discretion. *See id*.

> "[A]n abuse of discretion exists if the trial court renders a judgment that is [plainly] unreasonable, arbitrary or capricious, fails to apply the law, or was motivated by partiality, prejudice, bias or ill will." [*Ambrogi v. Reber*, 932 A.2d 969, 974 (Pa. Super. 2007).] "If the record supports the trial court's reasons and factual basis, the court did not abuse its discretion." *Id*. In addition, the facts are to be viewed in a light most favorable to the winner at the trial court level.

*Commonwealth ex rel. Corbett v. Snyder*, 977 A.2d 28, 41 (Pa. Cmwlth. 2009).

On October 20, 2021, this Court issued a Rule to Show Cause why the appeal should not be quashed pursuant to Pennsylvania Rule of Appellate Procedure (Appellate Rule) 341(a) and the Pennsylvania Supreme Court's ruling in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), for filing a single appeal related to multiple trial court docket numbers. On November 8, 2021, Carlise filed an answer to the Rule to Show Cause, arguing that his filing did not violate *Walker* because the separately docketed matters had been consolidated and, thus, the trial court's order did not resolve issues arising under more than one trial court docket number. After determining that Carlise's appeal did not violate Appellate Rule 341(a), this Court discharged the Rule to Show Cause by November 10, 2021 Order.

On January 5, 2022, Serota filed an Emergency Application to Stay and/or Supersede Orders Directing Payment Pending Appeal, seeking to have this Court stay the trial court orders directing payment to the Receiver. On January 6, 2022, Carlise filed an Emergency Application to Stay Further Proceedings Pending Appeal, requesting that this Court order that the trial court

Rule of Appellate Procedure (Appellate Rule) 1925(b) (Appellate Rule 1925(b) Statement), which he did. On August 20, 2021, the trial court issued its opinion pursuant to Appellate Rule 1925(a) (Appellate Rule 1925(a) Opinion).[11]

## Discussion

### Appeal as of Right

Preliminarily, Concerned Owners argue that Carlise is not entitled to relief because his appeal is an impermissible interlocutory appeal. Carlise responds that the trial court's May 20, 2021 order was appealable as of right. *See* Carlise Reply Br. at 2-10.

The trial court's May 20, 2021 order denied Carlise's Motion to vacate the Receiver's appointment. As the Pennsylvania Superior Court has explained:

> An appeal "may only be taken from: [(]1) a final order or one certified by the trial court as final; [(]2) an interlocutory order as of right [Appellate Rule 311]; [(]3) an interlocutory order by permission; or [(]4) a collateral order [Appellate Rule 313]." *Est*[.] *of Considine v. Wachovia Bank*, 966 A.2d 1148, 1151 (Pa. Super. 2009); [*s*]*ee* Pa.R.A.P. 341(a). Stated another way, "an appeal properly lies only from a final order unless otherwise permitted by rule or statute." *G.B. v. M.M.B.*, . . . 670 A.2d 714, 717 ([Pa. Super.] 1996) (citations omitted).

---

proceedings be stayed pending disposition of this appeal. On January 7, 2022, this Court ordered that the trial court's proceedings were stayed pending argument before this Court. On January 12, 2022, Concerned Owners filed an answer opposing Serota's and Carlise's Emergency Applications. This Court conducted argument on the Emergency Applications on January 19, 2022. On January 27, 2022, this Court granted the Emergency Applications and ordered that the trial court was prohibited from taking further action while the appeal is pending before this Court.

On February 19, 2022, Carlise filed an Application for Leave to File a Post-Brief Submission to correct an erroneous citation in his brief, which this Court granted on February 28, 2022.

[11] On January 23, 2022, the Receiver adopted the trial court's Appellate Rule 1925(a) Opinion. On February 1, 2022, Serota joined in Carlise's brief. On June 9, 2022, Serota notified this Court that he would join Carlise's oral argument.

11

*K.D. v. E.D.*, 267 A.3d 1215, 1222 (Pa. Super. 2021). Relevant here, Appellate Rule 311(a)(2) expressly declares that an appeal may be taken as of right from "[a]n order confirming, modifying, dissolving, or refusing to confirm, modify or dissolve a[] . . . receivership[.]" Pa.R.A.P. 311(a)(2). Accordingly, Carlise's appeal is an appeal permitted as of right, not an impermissible interlocutory appeal.[12]

**Waiver**

In addition, Concerned Owners argue that Carlise waived his claims that the trial court erred by denying the Motion when the Receiver was appointed and/or permitted to continue to conduct Association business in violation of Rule 1533, and waived his claims related to "the conditions justifying the appointment" (i.e., failure to satisfy the legal standard to appoint a receiver), "the ongoing nature of the appointment," "the purported governance of the Association's dissolution by the Declaration, and the nature of [Concerned Owners'] initial pleading." Concerned Owners' Br. at 9 n.2.

Carlise declares that, since the trial court only allowed argument and did not conduct a full evidentiary hearing regarding the Receiver Petition, and the trial court's July 2019 Appointment Order and the Receiver's acceptance thereof were conditional, he did not waive those issues. *See* Carlise Reply Br. at 11-16.

Carlise asserts that the Receiver's appointment violated Rule 1533 because: (1) no notice was given regarding the appointment of a temporary receiver; (2) Concerned Owners failed to file a bond; (3) a hearing was not promptly held and no notice was given relative to the continuation of the Receiver's appointment; (4) the Receiver failed to provide security; and (5) the Receiver's term was not limited

---

[12] In the January 27, 2022 Order granting the Emergency Applications, this Court observed that this "appears to be an interlocutory order appealable as of right pursuant to [Appellate Rule] 311(a)(2)," but nevertheless allowed Concerned Owners to make appealability arguments in their brief on the merits. *Id.*

to a fixed period. Carlise further contends that Concerned Owners did not offer proper legal support for the Receiver's initial appointment and/or his continuation. In addition, Carlise claims that the Receiver's appointment and continuation violated the terms of the Settlement Agreement, Concerned Owners lacked standing to pursue the Receiver's appointment and continuation because they failed to file a derivative action, and Concerned Owners lacked the legal capacity and/or standing to pursue the Receiver's appointment and continuation when they are not a legal entity, they failed to properly commence the action, and the Receiver Petition was not properly served.

At the July 18, 2019 hearing on the Receiver Petition, Concerned Owners requested the trial court to appoint a receiver to dissolve the Association. The trial court took judicial notice that the parties disagreed on the issues, and announced that a temporary receiver was necessary to act as an arm of the trial court and to keep the Association functional. *See* R.R. at 105a-106a, 109a, 112a-113a. The trial court reasoned:

> I don't want to be back here every five minutes to find out whether [] Serota is running it appropriately and whether folks have complaints. I don't. I don't. I want to put a receiver in. Then I'm done. My receiver is going to tell me what is going on.

R.R. at 115a. Therefore, without hearing evidence, the trial court appointed a temporary receiver and concluded the proceeding, except to allow the parties to agree on the temporary receiver. *See* R.R. at 117a-118a.

In the order entered July 18, 2019, the trial court declared: "[A] temporary receiver shall be appointed. Robert [G.] Xides, [Jr.,] Esquire shall be appointed this date to serve as temporary receiver, so long as he accepts the appointment," and the Receiver shall file a report and recommendations within 45

13

days. R.R. at 121a. By July 24, 2019 letter, the Receiver accepted his appointment "as a temporary receiver . . . ." R.R. at 124a.

Despite that the trial court announced at the July 2019 hearing that the trial court was appointing a receiver, Carlise did not object to or otherwise challenge the trial court's decision. When the trial court specifically requested Carlise's position on the appointment of "a neutral receiver [] as an arm of the [c]ourt [to] get a [r]eport[,]" R.R. at 112a, Carlise's counsel responded only that "the appointment of a receiver is an extreme remedy." R.R. at 113a. Carlise did not then raise any objection to the Receiver Petition or Rule 1533's requirements, nor did he object at that time that Concerned Owners failed to offer proper legal support for the Receiver's initial appointment; the Receiver's appointment violated the terms of the Settlement Agreement; Concerned Owners lacked standing to pursue the Receiver's appointment because they failed to file a derivative action; Concerned Owners lacked legal capacity and/or standing to pursue the Receiver's appointment when they are not a legal entity; Concerned Owners failed to properly commence the action; or the Receiver Petition was not properly served (collectively, Objections).

Further, although the discussion at the trial court's December 10, 2019 status conference is unclear, the resulting December 12, 2019 Continuation Order reflected: "Temporary Receiver Robert G. Xides, Jr.[, Esquire] is empowered to conduct the business of the [Association] on a continuing basis from July 18, 2019 (the date of the original [o]rder of this [trial c]ourt in this case)[,] forward until issuance of a new [o]rder of the [trial c]ourt in this matter." R.R. at 179a-180a. There is no record evidence that Carlise raised the Objections.[13]

---

[13] The *Serota 2021* Court similarly observed:

> [W]e note the complicated procedural background of this case, with the near constant filing of pleadings, objections, exceptions, and motions or applications for special relief, along with numerous arguments and hearings. Notably, notwithstanding Serota's and

14

The law is well[]established that

> [w]hile a party has a duty to preserve an issue at every stage of a proceeding, he or she also **must comply with the general rule to raise an issue at the earliest opportunity**. *Renna v. Dep't of Transp., Bureau of Driver Licensing*, 762 A.2d 785, 788 (Pa. Cmwlth. 2000) (holding failure to raise issue during trial court's hearing constituted waiver).
>
> *Campbell v. Dep't of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 349 (Pa. Cmwlth. 2014) . . . [.]

*City of Phila. v. Rivera*, 171 A.3d 1, 6 (Pa. Cmwlth. 2017) . . . .

*In Re Petition to Set Aside Upset Tax Sale*, 218 A.3d 995, 998 (Pa. Cmwlth. 2019) (emphasis added); *see also Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 45 (Pa. 2011) ("Under prevailing Pennsylvania law, a timely objection is required to preserve an issue for appeal.").

The Pennsylvania Supreme Court has explained:

> Requiring a litigant to make a timely, specific objection during trial ensures that the trial court has a chance to correct alleged trial errors. *Dilliplaine v. Lehigh Valley Tr*[.] *Co.*, . . . 322 A.2d 114, 116 ([Pa.] 1974). We have stressed that "[w]aiver is indispensable to the orderly functioning of our judicial process and developed out of a sense of fairness to an opposing party and as a means of promoting jurisprudential efficiency by avoiding appellate court determinations of issues which the appealing party

---

Carlise's [O]bjections to [the Receiver's] appointment and actions, **neither directly challenged that appointment in July 2019 or in December 2019**, when the trial court clarified [the Receiver's] authority.

*Id*. at 18 n.18 (emphasis added).

15

> has failed to preserve." *Reilly*[ *v. Se. Pa. Transp. Auth.*],
> 489 A.2d [1291,] 1300 [(Pa. 1985)[14]].

*Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1124-25 (Pa. 2000). Accordingly, "[o]n appeal[,] the [appellate c]ourt will not consider a claim that was not called to the trial court's attention at a time when any error committed could have been corrected." *Campbell*, 86 A.3d at 349 n.3 (quoting *Thompson v. Thompson*, 963 A.2d 474, 475-76 (Pa. Super. 2008)).

Here, based on the record before this Court, Carlise did not raise *any* objections *at* the July 18, 2019 receivership hearing.[15] In addition, Carlise failed to raise the Objections in the six days after the trial court ordered the Receiver before the Receiver accepted the position, nor did he appeal from the trial court's Appointment or Continuation Orders or otherwise object prior to filing the Motion, the Petition for Special Relief, and the preliminary objections to Concerned Owners' Complaint in January 2020. Because Carlise did not raise the Objections at the earliest opportunity, which was to the trial court at the July 18, 2019 hearing, or at any other reasonable point before January 2020, he waived them.[16] *See Samuel-Bassett*; *In Re Petition to Set Aside Upset Tax Sale*.

**Substantive Issue**

The only substantive issue remaining for this Court's review is Carlise's claim that the trial court erred by denying the Motion when (a) Concerned

---

[14] *Reilly* was overruled on other grounds, as recognized by *In re: Estate of Shuman* (Pa. No. 1178 MDA 2020, filed Dec. 30, 2021).

[15] The fact that the trial court deemed it unnecessary for the parties to present evidence at the July 18, 2019 hearing did not preclude Carlise from then objecting to the trial court's decision on the bases he later raised.

[16] Concerned Owners' claim that Carlise waived these issues pursuant to Appellate Rule 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."), *see* Concerned Owners' Br. at 8-9, lacks merit because it is clear in the record that Carlise did, at some point, raise these issues before the trial court.

Owners failed to prove gross mismanagement, fraud, or similar circumstances in the Association's present or future operation; and (b) a five-member Board was ready, willing and able to govern the Association.

The law is well settled that "the decision as to whether a receiver should be appointed [or continued] is within the sound discretion of the [trial] court[.]" *Northampton Nat'l Bank of Easton v. Piscanio*, 379 A.2d 870, 873 (Pa. 1977).

> In determining in a specific case whether the [trial] court has properly exercised its discretion in arriving at the decision whether or not to appoint [and/or continue the appointment of] a receiver, the appellate court will consider all of the facts and circumstances. "In the absence of a clear abuse of discretion, matters purely within the discretion of a trial court are not reversible on appeal . . . [and] [t]o justify a reversal, the abuse of discretion must be clearly shown." *C. E. Williams Co. v. H. B. Pancoast Co.*, . . . 194 A.2d 189, 191 ([Pa.] 1963) (citations omitted).

*Hankin v. Hankin*, 420 A.2d 1090, 1103 (Pa. Super. 1980) (citations omitted) (*Hankin I*).[17] "Where substantial evidence supports findings . . . that a receiver is necessary to preserve the property and the rights of all the parties concerned . . . , the [trial court's] exercise of discretion must be affirmed." *Hankin v. Hankin*, 493 A.2d 675, 678 (Pa. 1985) (*Hankin II*).

> [W]here the appointment [or continuation] will work an irreparable injury to the rights and interests of others, where greater injury will probably result from the appointment [or continuation] or where the appointment [or continuation] will do no good, a receiver should not be appointed [or continued].
>
> . . . [W]hat constitutes irreparable injury . . . for each case must be evaluated in light of the facts established by the

---

[17] Abrogation on other grounds recognized in *Haymond v. Lundy*, 177 F. Supp. 2d 371 (E.D. Pa. 2001).

parties, their conduct and the relief necessary to do substantial justice under the circumstances.

The existence of waste or dissipation of assets, or fraud or mismanagement of [] assets, give cause for the appointment of a receiver, but we have never indicated that these are the only circumstances that would warrant the appointment of a receiver[.]

*Hankin II*, 493 A.2d at 677. This Court recognizes that, although dissension among the parties is alone insufficient to warrant appointing a receiver, it is a factor to be considered when deciding to appoint and/or continue a receiver's appointment. *See Hankin I*; *Bowman*.

Here, at the July 22, 2020 hearing on the Motion and the Petition for Special Relief, the trial court stated:

Let me just state for the record that in my understanding, or since it was my appointment, it was not limited to being a [Rule] 1533 receiver. This [R]eceiver was also an equitable receiver, the purpose of which was to take management of a property that was in dysfunction because of failure to agree and, as we know, a receiver is an arm of the [trial] court and the alternative to having a receiver would be to have every dispute that came about end up in court on my docket.

R.R. at 266a.

After four days of hearings on the Motion and the Petition for Special Relief, the trial court denied the Motion as follows:

First, Pennsylvania law makes clear that the [trial c]ourt may appoint a receiver where there has been gross mismanagement or fraud **or similar circumstances** such that a receiver is required. *Tate* . . . ([e]mphasis added); [*s*]*ee also Bowman* . . . . The evidence demonstrates that the Association['s] [B]oard members lacked legitimacy, were not transparent with the Association's members regarding the Association's finances and utilized Association funds to maintain control after they were voted out, among other things.

18

Second, the [p]arties' stipulations include that [] Carlise was appointed to the [] Board, but not elected to it; that on January 5, 2018, members of the Association voted [41] in favor and [23] against the dissolution of the Association; and that [] Carlise unilaterally appointed two individuals to the [] Board. July 22, 2020 Transcript 35:7-19 [(S.R.R. at 9b)]. This evidence illustrates a longstanding pattern of ignoring the Bylaws' strictures regarding elections and appointments to the [] Board[,] as well as the democratic will of the Association's membership. Ex. GG, the Bylaws, Article III [(R.R. at 49a-51a)]. Moreover, [the Receiver's Report] showed that the Association has been in a state of turmoil and dysfunction for, at the minimum, the first five years of its existence. [] Report, Pg. 6, Pgs. 9-10 [(R.R. at 132a, 135a-136a)].

In addition to the above, [the Receiver's R]eport concluded[:] (a) that the [] Board's actions from October 19, 2017, through September 5, 2019, and from September 3, 2019[,] lack[ed] legitimacy because there were/are only three [] Board members and the Bylaws require five; and (b) in the current environment, the continuation of the Association is a burden rather than a benefit to the community. At a minimum, the Association ought to be suspended, cease all regular activities[,] such as contracting for services, its activities should be limited to the payment of current debts, and wind down the Association's affairs under the supervision of the Receiver and the [trial] court. [] Report, Pgs. 16, 18, and 19 [(R.R. at 142a, 144a-145a)]. In sum, the evidence confirms that the Association needs a receiver in order to protect the interests of the [h]omeowners. No further evidence has been provided that the conditions of the Association have changed. Therefore, this [trial c]ourt . . . has committed no abuse of discretion in so acting.

Trial Ct. Appellate Rule 1925(a) Op. at 15-16 (R.R. at 402a-403a). Clearly, "[i]t was within the [trial court's] discretion to appoint [the R]eceiver [and to continue his appointment]. Our review of that decision, considering all of the facts and circumstances, reveals no abuse of discretion." *Hankin II*, 493 A.2d at 680. Accordingly, the trial court properly denied the Motion.

**Conclusion**

Based on the foregoing, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dan Sweigart, Claudia Benack, : 
Christine McNally, Patti Joseph, : 
Margaret Alice Bothwell (Thomson), : 
Beverly Romano, Georgene Siroky, : 
Leslie Hyde, Lou Sanotra, Rose Lepri, : 
Edward Szabo, Diane Szabo, Elizabeth : 
Szabo, Nancy Kusko, Travis Boyle, : 
Carrie Boyle, Judith Frazier, Betty : 
Caricchio, Kirk Bruce, Donna Schaude, : 
Janice Knapp, Jacqueline Carlucci, : 
Eleanor Jane Check, Cathy Newell, : 
Vicki Conti, Brian Jackson, Katherine : 
Jackson, Lorren Pallone, Anne Pieto, : 
Toni Weston, Keith Miller, Rose Mugo, : 
Mike Janosik, Dawna Fisher, Matt : 
Mager, Domenic Medina, Nina Carilli, : 
Nancy Rogozinski, Albert Sanders and : 
Justin Rees, a/k/a Concerned Owners of : 
Homes in London Towne Homeowners : 
Association : 
                       : 
               v. : 
                       : 
London Towne Homeowners : 
Association and Bennett Carlise : 
                       : 
               v. : 
                       : 
Matthew Serota : 
                       :   No. 591 C.D. 2021
Appeal of: Bennett Carlise : 

# O R D E R

AND NOW, this 9th day of August, 2022, the Allegheny County Common Pleas Court's May 20, 2021 order is affirmed.

 

                                       _____

                                       ANNE E. COVEY, Judge